Stuart J. West, SBN 202041
West & Associates, A PC
2815 Mitchell Drive, Suite 209
Walnut Creek, CA  94598
Tel:  925.465.4603

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Catherine Bennett,

    Plaintiff,

    vs.

Hosting.com and

DOES 1-10,

    Defendant

**COMPLAINT**

      Plaintiff, Catherine Bennett, doing business as How Fast They Grow (hereinafter, "Plaintiff") by and through her undersigned counsel, for her Complaint against defendant Hosting.com, (hereinafter, "Defendant") states the following.  Allegations made on belief are premised on the belief that the same are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## COMPLAINT

1.     Plaintiff Catherine Bennett is an individual with a residence in Walnut Creek, CA, hereinafter referred to as Plaintiff.

2.      Defendant Hosting.com, Inc. is incorporated in the state of Kentucky and has a principle place of business in Lousiville, Kentucky hereinafter referred to as Defendant and has multiple servers and service equipment located in Irvine, California.

3.      This action arises out of one or more of the following Acts; 15 U.S.C. §1125 et sec. or 18 U.S.C. §1030 et sec.  Jurisdiction is founded on Sections 1331 and 1338(a) of the Judicial Code (28 U.S.C. §§ 1331,1132, 1338(a) and 1338(b)).

4.      Venue is conferred by § 1391(b)(2) and (c) of the Judicial Code (28 U.S.C. § 1391(b)(2) and (c)).

**OPERATIVE FACTS**

5.      Plaintiff is the sole proprietor of How Fast They Grow.

6.      Adobe Systems Incorporated (hereinafter, Adobe®), is a computer software company with a principle place of business in San Jose, California.

7.      ColdFusion® is a federally issued trademark owned by Adobe® with registration number 1971442.

8.      The ColdFusion® mark has a filing date of June 8, 1995.

9.      The ColdFusion® mark has a registration date of April 30, 1996 on the principal register.

10.     The ColdFusion® mark has a first use date of May 11, 1995.

11.     The ColdFusion® mark has a first use in commerce date of May 11, 1995.

12.     On or about 2003, CFX Hosting was purchased by Hosting.com.

13.     CFX Hosting is now a division of Hosting.com.

14.     CFX Hosting was listed on Adobe®'s website as a ColdFusion® premier hosting partner.

15.     Ecom Enterprises, Inc. is How Fast They Grow's website development company.

16.     DataTech Laboratories, Inc. is How Fast They Grow's data recovery service.

17.     On or about April 2007, Plaintiff began searching for a host for her website www.howfasttheygrow.com.

18.     How Fast They Grow is a digital photo website whereby its members upload photos, store them, create unique photo pages and store their pages for eventual purchase as a 12" x 12" scrapbook page.

19.     One of the Plaintiff's requirements for a host was that the host run Adobe® ColdFusion® MX 7.0.2 Enterprise Edition software and support.

20.     On or about April 2007, Defendant's website claimed to have support contracts with Adobe® in running ColdFusion® MX7.0.2 Enterprise Edition software on its dedicated servers.

21.     Defendant and its hired account representatives claimed to be one of the few hosting companies that supported Adobe® ColdFusion® MX 7.0.2 Enterprise Edition software.

22.     Based in substantial part on the claims by Hosting.com that they had an ongoing support agreement with Adobe® for the ColdFusion® MX 7.0.2 Enterprise Edition software, Plaintiff entered into an agreement with Hosting.com to provide hosting for her website.

23.     Hosting.com then became a licensee and the dedicated server for the Plaintiff's personal information related to third parties.

24.      The server drives located in Irvine, CA were configured in a shadow copy (RAID1) configuration with 750 GB storage space per drive.

25.      The server was able to store and transmit electronic communication and conduct economic transactions.

26.      The hard drives contained stored communications.

27.      The data on the drives that was lost or in jeopardy of being lost includes credit card information for more than 700 orders.

28.      The data on the drives that was lost or in jeopardy of being lost is at least 5,764 customer accounts and passwords.

29.      The data on the dedicated server drives that was lost or in jeopardy of being lost includes at least 100,000 personal client digital photographs.

30.      The data on the dedicated server drives that was lost or in jeopardy of being lost includes at least 50,000 complete or partially complete scrapbook pages.

31.      The data on the dedicated server drives that was lost or in jeopardy of being lost includes emails from 10:15 pm on 5/13/2008 to 10:00 am on 5/14/2008.

32.      The data on the dedicated servers that was lost or in jeopardy of being lost includes gift card codes and balance information for approximately 120 customers from various states.

33.      The data on the drives that was lost or in jeopardy of being lost includes the entire code base for the rich internet applications and web design.

34.      The data on the drives that was lost or in jeopardy of being lost includes approximately 600 gallery files and images.

35.    The data on the drives that was lost or in jeopardy of being lost includes promotional codes and history for approximately 25 promotions.

36.    The data on the drives that was lost or in jeopardy of being lost includes the product database consisting of 270 page files.

37.    The data on the drives that was lost or in jeopardy includes at least 7 orders and data that were never able to be filled.

38.    Upon information and belief, Defendant had let service agreements lapse with Adobe®.

39.    Upon information and belief, Defendant installed incorrect and/or inferior versions of the software.

40.    Upon information and belief, Defendant installed the standard ColdFusion® software instead of the MX 7.0.2 Enterprise Edition of ColdFusion® that Plaintiff was lead to believe was being supplied and Defendant was contractually obligated to supply.

41.    Defendant failed to install updates for the software provided to Plaintiff.

42.    Defendant failed to install "Hot Fixes" highly recommended by Adobe® during the contract period.

43.    Upon information and belief, Plaintiff requested and Defendant agreed to provide Adobe® ColdFusion® MX 7.0.2 Enterprise Edition, Defendant provided ColdFusion® Standard.

44.    Plaintiff encountered multiple problems while her website was hosted by Hosting.com.

45.    Plaintiff encountered instability while her website was hosted by Hosting.com.

46.     Plaintiff's website encountered multiple outages while hosted by Hosting.com.

47.     Plaintiff encountered issues that led to 117 separate calls to the help desk between July 2007 and May 13, 2008.

48.     At least 100 of the 117 calls were identified as being related to ColdFusion®, per Hosting.com.

49.     Defendant was aware or should have been aware they had no service agreement with Adobe® related to ColdFusion® MX 7.0.2 Enterprise Edition.

50.     Defendant knew Plaintiff was operating a for profit business through the website.

51.     On or about May 2008, Plaintiff learned that Hosting.com did not have an active service agreement for ColdFusion® MX 7.0.2 Enterprise Edition.

52.     On May 13, 2008 at 10:15 pm Plaintiff, contacted Defendant to advise that the www.howfasttheygrow.com website was down.

53.     At the time the website went down there were orders pending.

54.     Plaintiff spoke to an advisor who stated that Defendant would "reboot" ColdFusion® to get it up and running and then contact Plaintiff.

55.     On the morning of May 14, 2008, Plaintiff discovered that the www.howfasttheygrow.com site was still down.

56.     Plaintiff called Defendant again and was told that there was an "array failure" which caused both drives in the RAID1 configuration to fail simultaneously rendering the data unrecoverable.

57.      Plaintiff later learned the drives were re-provisioned earlier that morning prior to the call.

58.     On May 14, 2008, Plaintiff spoke with a representative of Defendant who stated that the hard drives would be sent via Fed Ex from Irvine, CA to Louisville, KY for inspection and data recovery.

59.     Defendant's representative stated that he was optimistic all or most of the data could be recovered.

60.     On May 14, 2008, Plaintiff made multiple telephone calls to Defendant for status reports.

61.     On May 14, 2008, Plaintiff received an unclear, ambiguous e-mail from Defendant's representative, Dan Green, which stated that the hard drives had been re-provisioned and that the data was unrecoverable.

62.     Defendant's representative, Dan Green, stated that Hosting.com had no responsibility or accountability for the situation.

63.     The data on the drives was the sole property of Plaintiff.

64.     Plaintiff never authorized the hard drives to be re-provisioned.

65.     On or about May 14, 2008 Plaintiff contacted Ecom Enterprises, the website development company.

66.     On or about May 14, 2008, Plaintiff contacted DataTech Laboratories Inc., the data recovery service.

67.     On or about May 14, 2008, Plaintiff called Defendant for clarification of an email message.

68.     Plaintiff also wanted to determine all available recovery options.

69.     On or about May 14, 2008, Defendant stated the data on the drives were unrecoverable.

70.     On May 14, 2008 Plaintiff and Ecom Enterprises made numerous requests to Defendant to release the drives for data recovery.

71.     Plaintiff offered to pay for the data recovery and shipping costs if performed by Plaintiff's identified company.

72.     On or about May 14, 2008, Plaintiff contacted DataTech Laboratories, the data recovery experts, who informed Plaintiff that there may still be some recoverable data on the hard drives.

73.     The expert stated that the re-provisioning of the drives by Defendant likely had caused further data loss.

74.     On or about May 14, 2008, DataTech Laboratories, Inc. informed Plaintiff that the likelihood of recovery was high, based on their success rates in similar situations in the past.

75.     All requests made by Plaintiff for the hard drives were denied by Defendant during the 48 hour period following the initial array failure.

76.     On May 15, 2008, Plaintiff and Ecom Enterprises requested the hard drives be sent to DataTech Laboratories, Inc.

77.     Defendant insisted the hard drives should be sent to a data recovery center of their choosing.

78.     Plaintiff and Ecom Enterprises denied any request that the drives be sent to a data recovery service of Defendant's choosing.

79.     Plaintiff stated to Defendant that this option was unacceptable.

80.     Plaintiff stated that there were serious trust issues that had arisen due to conduct of Defendant.

81.     Defendant has, since May 14, 2008, continued to refuse to release the drives with Plaintiff's data to Plaintiff.

82.     On or about May 15, 2008, Defendant advised Plaintiff that they had "already sent the drives out."

83.    The drives were released by Defendant to an unknown party.

84.    On or about May 22, 2008, Defendant demanded $2,500 for data recovery from Plaintiff and refused to tell Plaintiff where the drives were located.

85.    The release of the drives containing Plaintiff's data was without Plaintiff's consent.

86.    Defendant refused to release the name of the data recovery company to which the drives were sent after direct request by Plaintiff.

87.    As of the filing of this complaint, Defendant has not yet provided to Plaintiff the name of the third party to which the drives were sent.

88.    In the service agreement, between Plaintiff and Defendant, there is a line item listed for backup service.

89.    The charge for the backup service is listed as $60 per month.

90.    The agreement does not specify that Plaintiff must perform the backup if a data backup solution and related services is purchased and specifically set forth on Service Order.

91.    The backup service listed on the agreement is listed under the "services" section of the Service Order.

92.    Defendant informed Plaintiff it was her responsibility to perform the backup.

93.    Plaintiff reasonably assumed Defendant would perform the backup service since Plaintiff was being charged a monthly fee for a backup service.

94.    Plaintiff suffered damages based on the conduct of Defendant.

**FIRST CAUSE OF ACTION FOR PASSING OFF**

95.     Paragraphs 1 through 94 are incorporated herein as though set forth in their entirety.

96.     Defendant intentionally used the name and federally registered trademark ColdFusion® MX 7.0.2 Enterprise Edition.

97.     In reliance upon Defendant's claim to be one of the few hosting companies that supports ColdFusion® MX 7.0.2 Enterprise Edition, Plaintiff changed her position and entered into a contract with Defendant.

98.     As a result of the change of position based upon the use of the name ColdFusion®, Plaintiff suffered damages.


**SECOND CAUSE OF ACTION FOR FALSE ADVERTISING**

99.     Paragraphs 1 through 98 are incorporated herein as though set forth in their entirety.

100.    Defendant intentionally advertised using the name ColdFusion® MX 7.0.2 Enterprise Edition and service of that software in their dedicated server solutions.

101.    Defendant advertised that they were a preferred provider of ColdFusion® MX 7.0.2 Enterprise Edition on its dedicated servers.

102.    In reliance upon Defendant's use of the name ColdFusion® MX 7.0.2 Enterprise Edition in the advertisement, Plaintiff changed her position and entered into a contract with Defendant.

103.    As a result of the change of position based upon the use of the name ColdFusion® and the advertisement, Plaintiff suffered damages.


**THIRD CAUSE OF ACTION FOR UNFAIR COMPETITION**

104.    Paragraphs 1 through 103 are incorporated herein as though set forth in their entirety.

105.    Defendant intentionally engaged in unfair and unlawful competitive acts by using the name ColdFusion® MX 7.0.2 Enterprise Edition.

106.    In reliance upon Defendant's use of the name ColdFusion® MX 7.0.2 Enterprise Edition in the advertisement, Plaintiff changed her position and entered into a contract with Defendant.

107.    As a result of the change of position based upon the use of the name ColdFusion® and the advertisement, Plaintiff suffered damages.


**FOURTH CAUSE OF ACTION FOR FALSE REPRESENTATION**

108.    Paragraphs 1 through 107 are incorporated herein as though set forth in their entirety.

109.    Defendant made a false representation regarding their ability to license ColdFusion® MX 7.0.2 Enterprise multi-server Edition.

110.    Defendant knew this representation was false.

111.    Defendant made this representation with the intent Plaintiff would rely on the false representation.

112.    Plaintiff relied on the representation made by Defendant.

113.    Defendant caused harm to Plaintiff by the false representation.

114.    Plaintiff was damaged by the false representation.


**FIFTH CAUSE OF ACTION FOR FALSE DESIGNATION OF ORIGIN**

115.    Paragraphs 1 through 114 are incorporated herein as though set forth in their entirety.

116.     Defendant made a false designation of origin with regard to the delivery of ColdFusion® MX 7.0.2 Enterprise multi-server Edition.

117.     The false designation of origin had a substantial effect on interstate commerce.

118.     The false designation of origin created a likelihood of confusion among the public, namely Plaintiff.

119.     Based upon the false designation of origin, Plaintiff entered into a contractual agreement.

120.     As a result of the false designation of origin by Defendant, Plaintiff suffered damages.

## SIXTH CAUSE OF ACTION FOR FRAUD

121.     Paragraphs 1 through 120 are incorporated herein as though set forth in their entirety.

122.     Defendant willfully represented to Plaintiff that Defendant had and would continue, during the term of Plaintiff's agreement with Defendant, to have valid service contracts in place with Adobe® related to ColdFusion® MX 7.0.2 Enterprise Edition.

123.     At the time the time Defendant represented to Plaintiff that Defendant had and would continue, during the term of Plaintiff's agreement with Defendant, to have valid service contracts in place with Adobe® related to ColdFusion® MX 7.0.2 Enterprise Edition, Defendant knew and/or should have know that it did not have such service contract in place.

124.     In reliance upon Defendant's representations, Plaintiff entered into an agreement with Defendant.

125.    As a direct and proximate result of Defendant's misstatement of a material fact, Plaintiff suffered damages.

## SEVENTH CAUSE OF ACTION UNDER THE FEDERAL COMPUTER FRAUD AND ABUSE ACT

126.    Paragraphs 1 through 125 are incorporated herein as though set forth in their entirety.

127.    Defendant exceeded their authorized access to Plaintiff's data.

128.    Defendant used such access to obtain or alter information Defendant was not entitled to obtain or alter, namely the re-provisioning and/or overwriting the original data on the drives.

129.    As a result of Defendant's actions, Plaintiff suffered in excess of $5,000 in damages.

## EIGHTH CAUSE OF ACTION UNDER THE FEDERAL COMPUTER FRAUD AND ABUSE ACT

130.    Paragraphs 1 through 129 are incorporated herein as though set forth in their entirety.

131.    Defendant intentionally exceeded its authorization to access the server and its drives.

132.    Defendant thereby obtained, altered, or prevented authorized access to one or more wired electronic communications stored on Plaintiff's drives.

133.    As a result of Defendant's actions, Plaintiff suffered in excess of $5,000 in damages.

1

2

3        **NINTH CAUSE OF ACTION FOR DESTRUCTION OF PROPERTY**

4    134.    Paragraphs 1 through 133 are incorporated herein as though set forth in

5        their entirety.

6    135.    Plaintiff had exclusive ownership of the data on the hard drives.

7    136.    Defendant had no ownership of the data on the drives.

8    137.    Defendant had a duty not to destroy the property of Plaintiff.

9    138.    Defendant intentionally re-provisioned the drives; thereby destroying the

10        data on the drives.

11    139.    Defendant's unauthorized destruction of Plaintiff's property caused Plaintiff

12        to suffer damages.

13

14        **TENTH CAUSE OF ACTION FOR TRESPASS TO CHATTEL**

15    140.    Paragraphs 1 through 139 of this Complaint and incorporated herein as

16        though set forth in their entirety.

17    141.     Defendant intentionally interfered with the Plaintiff's possession of

18        Plaintiff's data stored on the server.

19    142.    Defendant's interference caused the Plaintiff injury.

20    143.    Plaintiff had data stored on the server.

21    144.    Defendant intentionally interfered with Plaintiff's data on the server.

22    145.    Defendant's intentional interference caused Plaintiff damage.

23

24

25

**ELEVENTH CAUSE OF ACTION FOR EMBEZZELMENT**

146.     Paragraphs 1 through 145 are incorporated herein as though set forth in their entirety.

147.     Defendant was entrusted with Plaintiff's property, namely data stored on the server's hard drives.

148.     Defendant's scope of authority did not extend to alteration of data stored on the hard drives.

149.     Defendant, by re-provisioning the hard drives, altered Plaintiff's data stored on the server hard drives.

150.     As a direct and proximate result of the actions described in paragraphs 147-149, Plaintiff suffered damages.


**TWELFTH CAUSE OF ACTION FOR CONVERSION**

151.     Paragraphs 1 through 150 are incorporated herein as though set forth in their entirety.

152.     Plaintiff owned the rights to the data on the drives at the time of interference by Defendant.

153.     Defendant intentionally interfered with Plaintiff's personal property.

154.     The interference by Defendant deprived Plaintiff of possession or use of her personal property.

155.     The interference with Plaintiff's personal property by Defendant caused Plaintiff damages.

## THIRTEENTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE

156.    Paragraphs 1 through 155 are incorporated herein as though set forth in their entirety.

157.    Plaintiff and numerous third parties had an economic relationship with probable future economic benefit to plaintiff.

158.    Defendant had knowledge of these relationships.

159.    By re-provisioning the drives, Defendant intentionally disrupted these relationships.

160.    Defendant's interference was wrongful beyond the fact of interference.

161.    There was actual disruption of the relationships between Plaintiff third parties.

162.    As a result of this disruption, Plaintiff suffered harm.


## FOURTEENTH CAUSE OF ACTION FOR BREACH OF CONTRACT

163.    Paragraphs 1 through 162 are incorporated herein as though set forth in their entirety.

164.    Plaintiff and Defendant were parties to a valid contract.

165.    The contract required Defendant to provide Adobe® ColdFusion® MX 7.0.2 Enterprise Edition.

166.    Defendant failed to provide Adobe® ColdFusion® MX 7.0.2 Enterprise Edition; thereby breaching the contract.

167.    Defendant's failure to provide Adobe® ColdFusion® MX 7.0.2 Enterprise Edition caused Plaintiff damages.

**FIFTEENTH CAUSE OF ACTION FOR BREACH OF CONTRACT**

168.     Paragraphs 1 through 167 are incorporated herein as though set forth in their entirety.

169.     Plaintiff and Defendant were parties to a valid contract.

170.     The contract required Defendant to provide backup service for Plaintiff.

171.     Defendant failed to backup Plaintiff's data; thereby breaching the contract.

172.     Defendant's failure to backup caused Plaintiff damages.


**SIXTEENTH CAUSE OF ACTION FOR BREACH OF CONTRACT**

173.     Paragraphs 1 through 172 are incorporated herein as though set forth in their entirety.

174.     Plaintiff and Defendant were parties to a valid contract.

175.     The contract required Defendant to provide two 750 GB data drives in RAID1 configuration.

176.     Defendant failed to provide two 750 GB data drives after the drives were re-provisioned.

177.     Defendant's failure to provide the drives caused Plaintiff damages.


**SEVENTEENTH CAUSE OF ACTION FOR BREACH OF CONTRACT**

178.     Paragraphs 1 through 177 are incorporated herein as though set forth in their entirety.

179.     Plaintiff and Defendant were parties to a valid contract.

180.     The contract required Defendant to install security patch updates.

181.     Upon information and belief, Defendant failed to install updates related to software contained on the server.

182.    Defendant's failure to install the updates caused Plaintiff damages.

## EIGHTEENTH CAUSE OF ACTION FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALINGS

183.    Paragraphs 1 through 182 are incorporated herein as though set forth in their entirety.

184.    California law implies a  covenant of good faith and fair dealings present in all contracts.

185.    Defendant breached this implied covenant of good faith and fair dealings by re-provisioning the drives.

186.    The re-provisioning of the drives by Defendant caused Plaintiff damages.

## NINETEENTH CAUSE OF ACTION FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALINGS

187.    Paragraphs 1 through 186 are incorporated herein as though set forth in their entirety.

188.    California law implies a covenant of good faith and fair dealings present in all contracts.

189.    Defendant breached this implied covenant of good faith and fair dealings by failing to allow Plaintiff access to the drives/data.

190.    Defendant's failure to allow Plaintiff access to the drives/data caused Plaintiff damages.

**TWENTIETH CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT**

191.    Paragraphs 1 through 190 are incorporated herein as though set forth in their entirety.

192.    Plaintiff entered into a contract with Defendant based on Defendant's representation that they were a ColdFusion® MX 7.0.2 Enterprise Edition provider.

193.     Defendant knew they were not an authorized ColdFusion® MX 7.0.2 Enterprise Edition provider.

194.    Plaintiff relied on Defendant's representation that they were a ColdFusion® MX 7.0.2 Enterprise Edition provider.

195.    Defendant's representation that they were a ColdFusion® MX 7.0.2 Enterprise Edition provider caused Plaintiff damage.


**TWENTY FIRST CAUSE OF ACTION FOR INTENTIONAL SPOLIATION OF EVIDENCE**

196.    Paragraphs 1 through 195 are incorporated herein as though set forth in their entirety.

197.    There was pending or probably litigation involving Plaintiff at the time Defendant re-provisioned the drives.

198.    Defendant knew there was pending or probable litigation involving Plaintiff.

199.    Defendant performed willful, possible, negligent destruction of evidence designed to disrupt Plaintiff's case.

200.    Defendant disrupted Plaintiff's case by re-provisioning the drives.

201.    Defendant's acts caused Plaintiff harm.

**TWENTY SECOND CAUSE OF ACTION FOR CONCEALMENT OF EVIDENCE**

202.    Paragraphs 1 through 201 are incorporated herein as though set forth in their entirety.

203.    Defendant had a legal obligation to Plaintiff to disclose her data to her.

204.    The data on the drives was material to Plaintiff's case.

205.    Plaintiff could not have readily learned the concealed information without Defendant disclosing it.

206.    Defendant intentionally failed to disclose the data to Plaintiff.

207.    Defendant caused Plaintiff harm by relaying the non-disclosure.


**TWENTY THIRD CAUSE OF ACTION FOR NEGLIGENCE**

208.    Paragraphs 1 through 207 are incorporated herein as though set forth in their entirety.

209.    Defendant owed Plaintiff a duty of care to not destroy Plaintiff's property.

210.    Defendant breached that duty by re-provisioning the hard drives.

211.    Defendant's breach of duty to Plaintiff caused Plaintiff damages.


**TWENTY FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY**

212.    Paragraphs 1 through 211 are incorporated herein as though set forth in their entirety.

213.    Defendant owed Plaintiff a fiduciary duty based on the relationship between Defendant and Plaintiff.

214.    Defendant breached that fiduciary duty by re-provisioning the drives.

215.    Defendant's breach of the fiduciary duty by re-provisioning the drives caused Plaintiff damage.

## TWENTY FIFTH CAUSE OF ACTION FOR EXTORTION

216.    Paragraphs 1 through 215 are incorporated herein as though set forth in their entirety.

217.    Defendant refused to release the drives to Plaintiff

218.    Defendant compelled payment from Plaintiff in order to have a third party attempt data recovery from the drives.

219.    Defendant demanded $2,500 for data recovery from Plaintiff and refused to tell Plaintiff where the drives were located.

220.    Defendant demanded $2,500 in order to perform data recovery on the drives.

221.    Defendant's actions described in paragraphs 217-220 caused Plaintiff damages.

## TWENTY SIXTH CAUSE OF ACTION FOR PRIVACY RIGHTS VIOLATIONS
## UNDER CCP §1798.81.5

222.    Paragraphs 1 through 221 are incorporated herein as though set forth in their entirety.

223.    Defendant was a licensee of Plaintiff's third party information.

224.    As a licensee of the information, Defendant did not implement and maintain reasonable security procedures and practices to protect the information on the hard drives by re-provisioning the drives.

225.    As a licensee of the information, Defendant did not implement and maintain reasonable security procedures and practices to protect the information on the hard drives by delivering data on the drives to an undisclosed third party.

226.    Defendant's actions as described in paragraphs 223-225 caused damage to Plaintiff.

**TWENTY SEVENTH CAUSE OF ACTION UNDER BUSINESS AND PROFESSIONS CODE §17200 FOR UNLAWFUL BUSINESS ACTS OR PRACTICE**

227.    Paragraphs 1 through 226 are incorporated herein as though set forth in their entirety.

228.    Defendant engaged in unlawful business acts or practices by charging Plaintiff for ColdFusion® MX 7.0.2 Enterprise Edition while providing ColdFusion® Standard.

229.    Defendant's running of ColdFusion® Standard caused damage to Plaintiff.

**TWENTY EIGHTH CAUSE OF ACTION UNDER BUSINESS AND PROFESSIONS CODE §17200 FOR UNFAIR BUSINESS ACTS OR PRACTICE**

230.    Paragraphs 1 through 229 are incorporated herein as though set forth in their entirety.

231.    Defendant engaged in unlawful business acts or practices by re-provisioning the drives without Plaintiff's consent or knowledge.

232.    Defendant's re-provisioning of the drives caused damage to Plaintiff.

## TWENTY NINTH CAUSE OF ACTION UNDER BUSINESS AND PROFESSIONS CODE §17200 FOR UNFAIR, DECEPTIVE, UNTRUE, OR MISLEADING ADVERTISING

233.    Paragraphs 1 through 232 are incorporated herein as though set forth in their entirety.

234.    Defendant engaged in unlawful business acts or practices by advertising that they were an authorized provider of ColdFusion® MX 7.0.2 Enterprise Edition.

235.    Plaintiff relied on this advertisement to select a provider.

236.    Defendant's advertisement caused Plaintiff damage.

## THIRTIETH CAUSE OF ACTION UNDER CA UNFAIR COMPETITION LAWS

237.    Paragraphs 1 through 236 are incorporated herein as though set forth in their entirety.

238.    Defendant advertised that they were an authorized provider of ColdFusion® MX 7.0.2 Enterprise Edition.

239.    Plaintiff selected Defendant as a hosting company based on the fact that Defendant stated they were an authorized provider of ColdFusion® MX 7.0.2 Enterprise Edition.

240.    Defendant's advertisement and Plaintiff's reliance thereon caused Plaintiff damage.

**WHEREFORE, Plaintiff prays:**

A.      Judgment against Defendant;

B.      For general damages in the amount of $150,000;

C.      For punitive damages in an amount to be determined by the Court;

D.      For special damages in an amount to be determined by the Court;

E.      The costs of suit incurred herein; and

F.      For such other and further relief as the Court may deem proper.


Dated this 6th day of August, 2008


/s/ _____

Stuart J. West, SBN 202041
West & Associates, A PC
2815 Mitchell Drive
Suite 209
Walnut Creek, CA  94598